Kristin L. Martin (*pro hac vice application pending*)
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Tel: (415) 597-7200
Fax: (415) 597-7201
Email: klm@msh.law

Cassie Ehrenberg (SBN 88830)
CLEARY, JOSEM & TRIGIANI LLP
127 Maple Avenue
Red Bank, NJ 07701
Tel: (609) 407-0222
Email: cehrenberg@cjtlaw.org

*Attorneys for Fedra Zuzunaga*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDRA ZUZUNAGA,<br><br>              Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC.,<br><br>              Defendants. | CASE NO. _____<br><br>**Complaint**<br><br>[Violation of the Railway Labor Act, 45 U.S.C. § 151 *et seq.*]<br><br>**Jury Trial Demanded** |

### Preliminary Statement

1. This is an action for violation of the Section 2 of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (hereinafter, "Railway Labor Act"), which gives

1

employees the right to choose their representatives for collective bargaining without interference or coercion by their employer. Plaintiff Fedra Zuzunaga (hereinafter, "Zuzunaga") brings this action against her employer Defendant United Airlines, Inc. (hereinafter, "United Airlines") because United Airlines suspended and later terminated Zuzunaga's employment after Zuzunaga became known to United Airlines as leader in employees' effort to choose UNITE HERE International Union (hereinafter, "the Union") to be their collective-bargaining representative.

**Parties**

2. Zuzunaga was employed by United Airlines at its food production facility on the property of Newark Liberty International Airport (hereinafter, "Newark Airport") in Newark, New Jersey from approximately 2007 until August 20, 2018. Zuzunaga resides in Elizabeth, New Jersey.

3. United Airlines is "common carrier by air engaged in interstate or foreign commerce" within the meaning of Section 201 of the Railway Labor Act, 45 U.S.C. § 181. United Airlines operates at Newark Airport which is a hub for United Airlines' domestic and international flights. United Airlines also operates a food production facility in Newark, New Jersey where Defendant's employees prepare food for consumption on flights leaving from Newark Airport.

## Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 because this case arises under 45 U.S.C. § 152.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because United Airlines resides in this district and because a substantial part of the events or omissions giving rise to Zuzunaga's claim arose in this district.

## Background Facts

6. The Union is a labor organization that represents employees in the food service industry. Since approximately 2017, the Union has been engaged in organizing employees of United Airlines' food production facilities, including the facility where Zuzunaga worked.

7. Zuzunaga has participated in the Union's efforts to organize United Airlines' employees as a leader of her coworkers and as a member of the Union's rank-and-file organizing committee.

8. On or about January 24, 2018, the Union filed an application with the National Mediation Board for an election to become the collective-bargaining representative of a bargaining unit of United Airlines' employees. In support of its application, the Union submitted authorization cards from United Airlines' employees. At the time, Zuzunaga was employed in the bargaining unit that the Union sought to represent.

9. Section 2, Ninth of the Railway Labor Act requires the National Mediation Board to conduct elections "within thirty days after the receipt of the invocation of its services."

10. Since the Union submitted its application for an election to the National Mediation Board, United Airlines has conducted an aggressive campaign to discourage its employees from joining the Union and supporting the effort to unionize. United Airlines does not want its employees to join the Union and is hostile to their efforts to select the Union to be their collective-bargaining representative.

11. On about February 8, 2018, United Airlines filed a position statement with the National Mediation Board in which United Airlines alleged that the authorization cards that the Union submitted in support of its application were obtained through fraud, threats and coercion. By making this allegation to the National Mediation Board, United Airlines caused the National Mediation Board to refrain from promptly scheduling an election and instead to conduct an investigation of the allegations.

12. The National Mediation Board conducted a thorough investigation of United Airlines' allegation that the Union obtained authorization cards through fraud, threats and coercion. As part of the investigation, investigators acting on behalf of the National Mediation Board interviewed United Airlines' management

officials and employees in the bargaining unit that the Union applied to represent. These interviews were conducted from April to July 2018 at United Airlines' facilities, including the facility where Zuzunaga worked.

13. United Airlines had the opportunity to present witnesses to support its allegation of fraud, threats and coercion to the National Mediation Board's investigators.

14. On or about August 22, 2018, the National Mediation Board issued findings based on its investigation. In those findings, the National Mediation Board rejected United Airlines' claims of fraud, threats and coercion, and authorized an election to be held to allow employees to decide whether to authorize the Union to represent them. Voting in that election began on September 18, 2018 and will end on October 23, 2018.

15. On January 24, 2018, Zuzunaga announced to her coworkers in the employee breakroom at United Airlines' facility where she worked that the Union had applied for a representation election. That same day, United Airlines suspended Zuzunaga's employment because Zuzunaga made that announcement to her coworkers.

16. On or about February 12, 2018, United Airlines reinstated Zuzunaga's employment and issued her a "termination warning." United Airlines did not pay Zuzunaga's wages or benefits while Zuzunaga's employment was suspended.

17. Since Zuzunaga returned to work on or about February 13, 2018, Zuzunaga has continued to engage in activity in support of the Union and to make her support for the Union known to United Airlines' managers and supervisors.

18. Since Zuzunaga returned to work on or about February 13, 2018, United Airlines' managers and supervisors increased the frequency and amount of time that they monitor and supervise Zuzunaga's work. Zuzunaga is informed and believes and thereupon alleges that United Airlines' managers and supervisors increased monitoring and supervision of Zuzunaga because United Airlines knows Zuzunaga to be a leader of the Union and desired to find a reason to discipline Zuzunaga and terminate Zuzunaga's employment.

19. On or about February 14, 2018, Zuzunaga distributed paper roses with the words "We Love Equality" to her coworkers in the employee breakroom. The slogan "We Love Equality" is a reference to the unequal treatment between the employees whom the Union seeks to represent and United Airlines' other employees. United Airlines General Manager Elliott Mosby told Zuzunaga that she was not allowed to distribute the paper roses.

20. On or about May 11, 2018, Zuzunaga distributed leaflets with a prounion message to her coworkers in the employee breakroom. United Airlines Supervisor Iris Martinez told Zuzunaga that she was not allowed to distribute prounion leaflets in the employee breakroom.

21. Cooler 7 is an area of United Airlines' food production facility in Newark where employees prepare food for United Airlines' flights. On or about August 16, 2018, United Airlines General Manager Elliott Mosby told employees who were assigned to work in Cooler 7, including Zuzunaga, that they would not work in Cooler 7 due to a bacterial contamination. In the presence of United Airlines' employees, Zuzunaga asked Mosby to tell her the name of the bacteria. On August 16, 2017, Mosby did not tell Zuzunaga the name of the bacteria that contaminated Cooler 7.

22. On or about August 17, 2018, Zuzunaga again asked United Airlines General Manager Elliott Mosby for the name of the bacteria that was found in Cooler 7. Zuzunaga told Mosby that she and her coworkers wanted to know the name of the bacteria so that they could protect their health. Mosby told Zuzunaga that the bacteria was listeria.

23. On or about August 17 and 18, 2018 United Airlines assigned some of the employees who had formerly worked in Cooler 7, including Zuzunaga, to work in a hallway with little or no ventilation and to use large quantities of dry ice to keep food cold. Dry ice emits carbon dioxide which can be unsafe to breathe.

24. On August 17 and 18, 2018, Zuzunaga expressed concerns to United Airlines managers about health and safety issues, including that employees could be sickened by presence of listeria and by working with dry ice in an area without

sufficient ventilation. Zuzunaga requested that United Airlines take steps to protect her and her coworkers, but United Airlines failed to do so.

25. On or about August 18, 2018, Zuzunaga distributed leaflets from the Union to her coworkers about the health and safety risks of listeria and dry ice.

26. Zuzunaga did not work on August 19, 2018 because it was her scheduled day off.

27. On or about August 20, 2018, soon after Zuzunaga arrived at work, United Airlines terminated Zuzunaga's employment. The reasons that United Airlines gave for terminating Zuzunaga's employment are that on June 27, 2018, Zuzunaga "failed to maintain potentially hazardous foods (PHF) within the prescribed safe temperature range" and that Zuzunaga "made false entries on [her] Hazard Analysis and Critical Control Points (HACCP) log."

28. The allegation that Zuzunaga "failed to maintain potentially hazardous foods (PHF) within the prescribed safe temperature range" referred to yogurt was measured at the temperature of 47.1 degrees Fahrenheit. At the United Airlines facility where Zuzunaga worked, the practice when the temperature of yogurt is measured at 47.1 degrees Fahrenheit is to place the yogurt in a cooler to reduce the temperature. Zuzunaga is informed and believes and thereupon alleges that on June 27, 2018, Manager Gustavo Molla placed the yogurt that allegedly reached 47.1 degrees Fahrenheit in a cooler and did not discard it.

29.     The allegation that Zuzunaga "made false entries on [her] Hazard Analysis and Critical Control Points (HACCP) log" refers to Zuzunaga's practice of listing flight numbers and initialing entries on the log before recording the time and temperature of food.  Zuzunaga has used this practice to ensure that she does not forget to record the time and temperature of food.  Zuzunaga had followed this since before she began organizing a union.  Prior to August 20, 2018, United Airlines did not discipline Zuzunaga for doing so.

30.     Zuzunaga did not write any false temperature recordings or times on her Hazard Analysis and Critical Control Points (HACCP) log, and United Airlines did not terminate Zuzunaga for doing so.

31.     Zuzunaga is informed and believes and thereupon alleges that the reason that United Airlines gave for terminating Zuzunaga's employment is not the true or complete reason that United Airlines terminated Zuzunaga's employment, and is a pretext to interfere with Zuzunaga's efforts to organize her coworkers to support the Union and to coerce Zuzunaga and her coworkers.  Zuzunaga is informed and believes and thereupon alleges that United Airlines terminated her employment is because Zuzunaga is a leader of her coworkers in the effort to unionize, that United Airlines expected that the National Mediation Board would soon order a representation election, and that United Airlines did not want

Zuzunaga in the workplace where she would be likely to persuade her coworkers to vote for the Union.

## First Cause of Action

32. The Union incorporates by reference the allegations contained in Paragraphs 1 to 31 as if fully set forth herein.

33. Section 2, Third of the Railway Labor Act, 45 U.S.C. § 152, prohibits air carriers from interfering with, influencing, or coercing employees in their choice or designation of representatives for collective bargaining.

34. Section 2, Fourth of the Railway Labor Act, 45 U.S.C. § 152, provides that "[e]mployees shall have the right to organize and bargain collectively through representatives of their own choosing." Section 2, Fourth further provides that "No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or . . . to influence or coerce employees in an effort to induce them . . . not to join or remain members of any labor organization."

35. United Airlines violated Section 2, Third of the Railway Labor Act by its treatment of Zuzunaga, including its termination of Zuzunaga's employment in August 2018.

36. United Airlines violated Section 2, Fourth of the Railway Labor Act by its treatment of Zuzunaga, including its termination of Zuzunaga's employment in August 2018.

37. As a direct and proximate cause of United Airlines' treatment of Zuzunaga, including its termination of her employment, Zuzunaga has suffered monetary damages in the form of lost wages and benefits, and has suffered mental anguish.

38. Zuzunaga is informed and believes and thereupon alleges that United Airlines deliberately and willfully violated Zuzunaga's rights under the Railway Labor Act.

## Request for Relief

Wherefore, Zuzunaga asks for a judgment against United Airlines as follows:

    a. Reinstatement to her position as a food preparation employee in United Airlines' food preparation facility at Newark Liberty Airport on the same shift and with no loss of seniority;

    b. Damages to make Zuzunaga whole, including lost wages and benefits;

    c. Punitive damages to remedy the deliberate and willful violation of Zuzunaga's rights under the Railway Labor Act;

    d. Prejudgment and post judgment interest;

    e.    Costs and reasonable attorneys' fees expended in bringing this action; and

    f.    Any other relief as this Court deems just and proper.

### Demand for Jury Trial

Plaintiff Fedra Zuzunaga demands a trial by jury on all issues in accordance with the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

Respectfully submitted,

/s/Cassie Ehrenberg
Cassie Ehrenberg (SBN 88830)
CLEARY, JOSEM & TRIGIANI LLP
127 Maple Avenue
Red Bank, NJ 07701
Tel:  (609) 407-0222
Email: cehrenberg@cjtlaw.org

Kristin L. Martin (*pro hac vice application pending*)
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Tel:  (415) 597-7200
Fax:  (415) 597-7201
Email: klm@msh.law

*Attorneys for Fedra Zuzunaga*

Dated: 09/21/2018